# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Respondent,

    v.

BURNICE RENEE THOMPSON,

        Appellant.

No. 74134-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 8, 2016

SPEARMAN, C.J. — Burnice Thompson was convicted of two counts of Medicaid false statement and one count of theft in the first degree. She appeals, claiming that the trial court violated her right against double jeopardy because the two false statement offenses merged with her conviction for theft in the first degree. We disagree and affirm the convictions.

## FACTS

Beginning in 2010, Burnice Thompson provided in-home care services for her grandmother Tressie Henderson through the Medicaid funded Community Options Program Entry System (COPES). From 2012 to 2013, Thompson was authorized to provide 304 hours of care per month at $10.46 per hour through the Department of Social and Health Services (DSHS). She submitted monthly invoices through the Social Services Payment System. In the event of Henderson's death, Thompson was

required to report the incident within twenty-four hours. She was also required to provide written notification of death to Henderson's case manager within seven days.

Henderson passed away on November 24, 2012, and Thompson reported her passing to the Social Security Department. Three days later Thompson left a message for the case manager but did not submit the required written notification.

On December 31, 2012, Thompson submitted a telephonic invoice to DSHS for services for that month. She received a payment in the amount of $2,725.47 on January 5, 2013. On February 4, 2013, Thompson submitted another telephonic invoice for January under the contract, for which she also received payment of $2,726.07. Additionally, Thompson submitted an invoice for vacation pay in January 2013, for which she was paid $65.28.

During this time Thompson also submitted weekly claims for unemployment compensation. In her application she indicated that she had been a COPES individual provider through November 24, 2012, the date of her grandmother's death. In an interview in June 2013, Thompson admitted to submitting telephonic invoices for services to DSHS for December 2012 and January 2013, knowing that Henderson was deceased.

Thompson was charged with and convicted of two counts of Medicaid false statement and one count of theft in the first degree. Prior to sentencing she moved to dismiss the false statement counts on double jeopardy grounds, arguing they merged with the theft count. The trial court denied the motion, concluding the merger doctrine was inapplicable because each crime had an independent purpose and effect. The court imposed a standard range sentence. Thompson appeals.

DISCUSSION

Thompson contends that the trial court violated her constitutional right against double jeopardy by convicting her of the two counts of Medicaid false statement. She argues that the two false statement offenses merged with her conviction for theft in the first degree. The State argues that there is no double jeopardy violation because the legislature intended for the crimes of theft and Medicaid false statement to be punished as separate crimes.[1]

We review constitutional challenges de novo. State v. Esparza, 135 Wn. App. 54, 61, 143 P.3d 612 (2006) (citing State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005)). Article I, section 9 of the Washington Constitution and the Fifth Amendment to the federal constitution protect persons from a second prosecution for the same offense and from multiple punishments for the same offense imposed in the same proceeding. In re Pers. Restraint of Percer, 150 Wn.2d 41, 49, 75 P.3d 488 (2003) (citing State v. Gocken, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995)). Nevertheless, the legislature may constitutionally authorize multiple punishments for a single course of conduct. State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995) (citing Whalen v. United States, 445 U.S. 684, 688, 100 S. Ct. 1432, 1436, 63 L. Ed. 2d 715 (1980)).

---

[1] Relying on State v. Wright, 183 Wn. App. 719, 734, 334 P.3d 22 (2014) the State also contends that the two crimes constituted separate criminal acts. In Wright, we declined to consider the crimes of theft and Medicaid false statement to be the "same criminal conduct" for sentencing purposes. But it is well established that a double jeopardy violation claim "is distinct from a 'same criminal conduct' claim and requires a separate analysis." State v. French, 157 Wn.2d 593, 611, 141 P.3d 54 (2006). "The double jeopardy violation focuses on the allowable unit of prosecution and involves the charging and trial stages. The 'same criminal conduct' claim involves the sentencing phase and focuses instead on the defendant's criminal intent." Id. Accordingly, we reject this argument.

Washington courts use a three-step analysis to determine whether the legislature authorized multiple punishments for one course of conduct. In re Pers. Restraint of Burchfield, 111 Wn. App. 892, 895, 46 P.3d 840 (2002). We first consider express or implicit legislative intent based on the criminal statutes involved. Calle, 125 Wn.2d at 776. If the statutory language is silent, we turn to the "same evidence" test, which asks if the crimes are the same in law and fact.[2] Id. at 777-78. In other words, whether, as charged, each offense includes elements not included in the other and whether proof of one offense would also prove the other. Id. at 777 (citing State v. Vladovic, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)). Third, if applicable, the merger doctrine may help determine legislative intent, where the degree of one offense is elevated by conduct constituting a separate offense. State v. Kier, 164 Wn.2d 798, 804, 194 P.3d 212 (2008). But even if two convictions would appear to merge on an abstract level under this analysis, they may be punished separately if the defendant's particular conduct demonstrates an independent purpose or effect of each. Id. (citing Freeman, 153 Wn.2d at 771).

In this case, it is undisputed that the legislature has made no express statement regarding separate punishments for the crimes of first degree theft and Medicaid false statement. And Thompson concedes, as she must, that the same evidence test is unavailing because the two offenses contain different elements and require proof of different facts. But she argues that the merger doctrine applies to her

---

[2] The test is set forth in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and its origin, names, and various applications are discussed at length in In re Orange, 152 Wn.2d 795, 815-21, 100 P.3d 291 (2004).

convictions because, in her view, the aggregation of the two counts of Medicaid false statements elevated the charge of theft from second to first degree. Thompson contends that as charged in this case, the first degree theft charge required proof that she wrongfully took the property of another by color or aid of deception in a sum which exceeded $5000. She further contends that the State proved she committed the theft by engaging in conduct amounting to two counts of Medicaid false statement and that she obtained a combined amount exceeding $5000 by committing those crimes. Finally, she contends the State linked the theft charge with the Medicaid offenses by alleging and proving that the theft charge resulted from a series of transactions that "were part of a criminal episode and/or a common scheme or plan." Brief of Appellant at 9-10.

In support of her argument, Thompson relies primarily on Kier, 164 Wn.2d 798. In Kier, the defendant was involved in a carjacking which resulted in convictions of second degree assault, committed by means of a deadly weapon, and first degree robbery based on the theft of the car during which he was armed with or displayed what appeared to be a deadly weapon. Id. at 808-09. The court noted that to prove the assault, the State had to prove that Kier's conduct caused a reasonable apprehension or fear of harm in the victim. The State alleged that the means by which Kier did so was by being armed with or displaying a deadly weapon. The court held that because the proof of this conduct established both second degree assault and elevated the robbery from second to first degree, the two crimes merged. Id. at 806.

5

Kier is of no help to Thompson. Thompson does not argue that proof of the conduct that resulted in her conviction of Medicaid false statement elevated the crime of theft to a higher degree, nor could she. The crime of Medicaid false statement does not require proof that any amount of money be obtained.[3] Instead, she argues that merger results because aggregation of the amounts obtained as a result of the two crimes elevated the theft to first degree. Thompson cites no authority for this proposition and we are aware of none.

But even if we were to accept the argument and conclude that the crimes merged, we would still reach the same result. Two convictions, which might otherwise merge, may still be punished as separate offenses if there is an independent purpose or effect to each. Freeman, 153 Wn.2d 773 (citing State v. Frohs, 83 Wn. App. 803, 807, 924 P.2d 384 (1996)). To determine whether this exception to the merger doctrine applies, we employ relevant principles of statutory construction, review the pertinent legislative history, ascertain whether the crimes involve different victims and whether the statutes at issue are located in different chapters of the criminal code. See Calle, 125 Wn.2d at 780-81 (finding the legislature intended to punish rape and incest as separate crimes based on the statutes' distinct purposes, their locations in different criminal code chapters, and the long-held belief that they constitute separate offenses).

---

[3] To prove Medicaid false statement as charged in this case, the State must prove that the accused "ha[d] knowledge of the occurrence of any event affecting (a) the initial or continued right to any payment," and "conceal[ed] or fail[ed] to disclose such event with an intent to fraudulently to secure such payment either in a greater amount or quantity than is due or when no such payment is authorized[.]" RCW 74.09.230(3).

In this case, a review of the language in other Medicaid related statutes shows an intent to regulate the provision of services and to prevent and deter fraudulent claims. RCW 74.09.200 states"[t]he legislature finds and declares it to be in the public interest and for the protection of the health and welfare of the residents of the state of Washington that a proper regulatory and inspection program be instituted in connection with the providing of medical, dental, and other health services to recipients of public assistance and medically indigent persons." The Legislature also enacted the Medicaid Fraud False Claims Act, chapter 74.66 RCW, to "provide this state with another tool to combat [m]edicaid fraud." LAWS OF 2012, ch. 241, § 101. Thus, while the statutes criminalizing Medicaid fraud seek to protect public health and welfare in connection with providing health services, the theft statutes protect individuals and their private property. See State v. Denny, 173 Wn. App. 805, 809-10, 294 P.3d 862 (2013) (distinguishing the crimes of theft and possession of controlled substances); RCW 74.09.200. Furthermore, the two statutes are also found in different RCW titles and chapters. Accordingly, we conclude that the legislature intended to consider theft and Medicaid false statement to be separate crimes and punished accordingly.

We hold that Thompson's convictions for theft in the first degree and Medicaid false statement are separate crimes and may be punished as such. The trial court did not err in doing so.

Affirmed.

Spearman, C.J.

WE CONCUR:

Leach, J.

Cox, J.