# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51006-5-II |
| Respondent, | |
| v. | |
| KEITH BYRON WOODY, JR., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — In a global plea agreement, Keith B. Woody, Jr. pled guilty to second degree assault for an incident in June 2016, first degree robbery while armed with a firearm for an incident in August 2016, and first degree unlawful possession of a firearm for an incident in October 2016. Woody appeals certain legal financial obligations (LFOs), arguing a portion of the restitution amount was not causally related to the June 2016 assault and the sentencing court wrongly imposed a $100 deoxyribonucleic acid (DNA) collection fee.  Woody also appeals a community custody condition requiring a chemical dependency evaluation and treatment and a finding that he used a motor vehicle in the commission of the offenses.  In his statement of additional grounds for review (SAG), Woody argues that his time for trial rights were violated and his offender score was miscalculated.  The State concedes error on the community custody condition and motor vehicle finding.

We affirm Woody's convictions, offender score, and the restitution amount. We accept the State's concession regarding the community custody condition and motor vehicle finding, and remand to the sentencing court to strike those condition from Woody's judgment and sentence. We also direct the sentencing court on remand to address the DNA collection fee by applying the 2018 legislative amendments to the LFO statutes consistent with *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

FACTS

After an investigation of two pharmacy robberies where the robber was armed with a firearm, the State charged Woody with two counts of first degree robbery while armed with a firearm, four counts of first degree unlawful possession of a firearm, and four counts of second degree assault involving pharmacy customers. One of the first degree robbery charges arose out of a June 2016 robbery of Walgreens' pharmacist, Sz-Chi Liang, and the second first degree robbery charge arose out of an August 2016 robbery of Mill Plain Pharmacy.

When officers arrested Woody for the pharmacy incidents, Woody was in possession of a firearm. The State also charged Woody with first degree unlawful possession of a firearm.

Woody and the State reached a global plea agreement regarding all of Woody's charges. Woody agreed to plead guilty to second degree assault of Liang for the June 2016 Walgreens incident, first degree robbery while armed with a firearm for the August 2016 Mill Plain Pharmacy incident, and first degree unlawful possession of a firearm for the October 2016 incident. Woody also agreed that the State could recommend a sentence of 162 months, the high end of a standard range sentence.

The State's plea offer stated that in exchange for the State's offer, Woody "agrees to pay restitution to victims of uncharged crimes contained in the discovery and/or dismissed counts." Clerk's Papers (CP) at 47. Although Woody did not sign the plea offer, Woody's plea statement included a checked box stating that the State's plea offer "is incorporated by reference." CP at 38. Woody signed his plea agreement.

The State provided Woody with two restitution reports prior to Woody's plea. The first showed Walgreens' reported loss of $3,917.01, which included cash loss of $975.00 and prescription medication loss of $2,942.01. The second showed Mill Plain Pharmacy's reported loss of $11,459.35, which included $10,459.35 for cash and prescription medication loss plus $1,000 for its insurance deductible. The total amount of restitution requested by the pharmacies was $15,376.36.

At the plea and sentencing hearing, the court accepted Woody's guilty pleas, calculated Woody's offender score at six, and sentenced him to 162 months plus a 60-month firearm enhancement. Regarding the restitution, the court then had the following colloquy with the prosecutor and defense counsel:

> THE COURT: Stipulated restitution?
>
> [DEFENSE COUNSEL]: I believe—I can't remember.
>
> [THE PROSECUTOR]: We had provided the documentation.
>
> . . . .
>
> THE COURT: On the restitution . . . they have got $15,376.00 for restitution that you would owe. You are entitled to a hearing to set the amount of restitution. It would require you coming back.
>
> Stipulate?

[DEFENSE COUNSEL]: We want to stipulate.

Verbatim Report of Proceedings (VRP) (Sept. 25, 2017) at 45. Based on Woody's stipulation, the sentencing court imposed $15,376.36 in restitution.

In addition to restitution, the sentencing court imposed a $100 DNA collection fee LFO. Also, by way of checked boxes, the trial court required Woody to undergo an evaluation and treatment for chemical dependency as a condition of community custody, determined that Woody used a motor vehicle in the commission of the crime, and required the Department of Licensing be notified of Woody's conviction.

Woody appeals.

ANALYSIS

A.    LFOs

1.    Restitution

a.    Imposition of restitution for Walgreens robbery

Woody argues that the $3,917.01 portion of the restitution order relating to the Walgreens incident must be vacated because there was no causal connection between that amount and the second degree assault he pleaded guilty to. Woody's argument fails.

We review a sentencing court's order of restitution for abuse of discretion. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). The trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009).

The sentencing court's authority to order restitution is purely statutory. *Griffith*, 164 Wn.2d at 965. RCW 9.94A.753(5) requires the sentencing court to award restitution "whenever the offender is convicted of an offense that results in injury to any person or damage to or loss of property." The general rule is that "'the award of restitution must be based on a causal relationship between the offense charged and proved and the victim's losses or damages.'" *State v. Woods*, 90 Wn. App. 904, 908, 953 P.2d 834 (quoting *State v. Johnson*, 69 Wn. App. 189, 191, 847 P.2d 960 (1993)), *review denied*, 136 Wn.2d 1021 (1998). The State carries the burden to establish by a preponderance of the evidence a causal connection between the restitution requested and the crime with which the defendant is charged. *State v. Dedonado*, 99 Wn. App. 251, 257, 991 P.2d 1216 (2000). However, the State is relieved of that burden if a defendant pleads guilty and expressly agrees to pay restitution for crimes for which the defendant was not convicted. *Woods*, 90 Wn. App. at 908.

Here, the State initially charged Woody with first degree robbery while armed with a firearm regarding the Liang and Walgreens robbery. The State provided Woody with a restitution report relating to the Walgreens incident prior to the parties' plea agreement. The report showed Walgreens' reported loss of $3,917.01. Woody and the State reach an agreement where Woody agreed to plead guilty to second degree assault of Liang. As part of the plea agreement, Woody agreed "to pay restitution to victims of uncharged crimes contained in the discovery and/or dismissed counts." CP at 47. During the sentencing hearing, Woody's counsel stipulated to a restitution amount of $15,376.36, which included Walgreens' reported loss of $3,917.01.

Woody agreed to pay restitution to victims of uncharged crimes or dismissed counts as part of his plea deal, which included the first degree robbery while armed with a firearm charge arising

from the Walgreens incident. And in exchange, Woody received the benefit of pleading guilty to a lesser offense of second degree assault against Liang. Since Woody expressly agreed to pay restitution for uncharged crimes or dismissed counts, the State need not prove a causal connection between the Walgreens restitution amount ($3,917.01) and second degree assault. *Woods*, 90 Wn. App. at 908. Accordingly, the sentencing court did not err in ordering Woody to pay restitution for the Walgreens robbery.

> b.      Ineffective assistance of counsel

Woody next argues he was denied effective assistance of counsel because defense counsel did not object to the restitution amount at the sentencing hearing. We disagree.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id* at 34.

As discussed above, Woody agreed to restitution as part of his plea agreement. Accordingly, any objection by counsel was likely to be futile. For this reason, counsel performance cannot be characterized as deficient. *See State v. Denny*, 173 Wn. App. 805, 811, 294 P.3d 862 (2013) (appellant does not show ineffective assistance of counsel by failing to make a motion if the motion would have been futile). Therefore, Woody's ineffective assistance of counsel claim also fails.

2.      DNA Collection Fee

Woody next requests that we strike the sentencing court's imposition of the $100 DNA collection fee as a LFO. He argues that the sentencing court failed to inquire into whether Woody's mental health impacted his ability to pay. In 2018, the legislature amended former RCW 43.43.7541 (2015), authorizing the imposition of a DNA collection fee "unless the state has previously collected the offender's DNA as a result of a prior conviction." LAWS of 2018, ch. 269, § 18. Our Supreme Court has held that the 2018 amendments to the LFO statutes apply to cases pending on direct review and not final when the amendments were enacted. *Ramirez*, 191 Wn.2d at 747.

Given Woody's prior criminal history as reflected in his offender score, it is likely his DNA has previously been collected. Therefore, we remand to the sentencing court to address the DNA collection fee by applying the 2018 legislative amendments and our Supreme Court's holding in *Ramirez*.

B.      SENTENCING CONDITION/USE OF MOTOR VEHICLE FINDING

Woody next argues that the sentencing court erred by ordering Woody to undergo a chemical dependency evaluation and treatment, and by finding that a motor vehicle was used in the commission of the crimes. The State concedes these errors. We accept the State's concession.

The sentencing court may, as a condition of a sentence, order chemical dependency treatment if the sentencing court "finds that the offender has any chemical dependency that has contributed to his or her offense." RCW 9.94A.607(1). Additionally, the sentencing court may instruct the Department of Licensing to revoke a defendant's license for one year upon conviction of a "felony in the commission of which a motor vehicle is used." RCW 46.20.285(4).

Here, the trial court required Woody to undergo an evaluation and treatment for chemical dependency as a condition of community custody, determined that Woody used a motor vehicle in the commission of the crime, and required the Department of Licensing be notified of Woody's conviction. However, there is no evidence that chemical dependency contributed to Woody's crimes. Similarly, there is no evidence that a motor vehicle was used in the commission of the crimes. Therefore, the State properly concedes that these conditions do not apply. Accordingly, we remand to the sentencing court to strike these conditions from Woody's judgment and sentence.

C.      SAG ISSUES

Woody contends that his time for trial rights were violated. He states that he "asked for a 60 day speedy trial" and that he "want[s] to know why [he] wasn't granted [his] constitutional right." SAG at 1. CrR 3.3 provides that a defendant detained in jail shall be brought to trial within 60 days of his arraignment. CrR 3.3(b)(1)(i). Our record does not contain information about Woody's exercise of this right, continuance motions, or any orders related to continuances. Thus, because this issue relies on matters outside our record, we cannot consider it on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The issue is more properly raised in a personal restraint petition. *Id.*

Woody also contends that the sentencing court miscalculated his offender score because "one of [his] plea deal charges is an unranked felony." SAG at 1. Woody fails to specify which charge he is referring to. Woody pled guilty to second degree assault, first degree robbery, and first degree unlawful possession of a firearm, which are all ranked felonies. RCW 9A.36.021(2)(a); RCW 9A.56.200(2); RCW 9.41.040(1)(b); see also RCW 9.94A.515 (seriousness level table). Therefore, based on our record, Woody's claim fails.

No. 51006-5-II

We affirm Woody's convictions, offender score, and the restitution to Walgreens, but we remand to the sentencing court to strike the community custody condition and motor vehicle finding from Woody's judgment and sentence. We also direct the sentencing court on remand to address the DNA collection fee by applying the 2018 legislative amendments to the LFO statutes consistent with *Ramirez*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Glasgow, J.

9