IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33419-8-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 34507-6-III) |
| v. | ) | |
| | ) | |
| JUAN CARLOS CORTEZ BARAJAS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| _____ | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| JUAN CARLOS CORTEZ BARAJAS | ) | |
| | ) | |
| Petitioner. | ) | |

KORSMO, J. — By way of appeal, Juan Barajas challenges his unlawful

imprisonment conviction, arguing that the trial court erred in admitting hearsay evidence

and the evidence was insufficient to support the conviction. By way of personal restraint

petition (PRP), Mr. Barajas challenges his intimidation of a witness and bribery of a

witness convictions and argues that the prosecutor committed misconduct in closing

argument. We affirm the convictions and dismiss the petition.

FACTS

On the evening of March 4, 2014, Maria Guzman returned to her parents' Ephrata

home after picking up her daughter from Ramos Diaz's home in Quincy. Juan Barajas,

who lived with the Guzman family, argued with Ms. Guzman. During the argument, Ms. Guzman asked Mr. Barajas to leave; he refused. When she attempted to leave, Mr. Barajas prevented her from doing so, leaving cuts and bruises on her arms. Ms. Guzman managed to get to the car and drove back to Quincy with Mr. Barajas following her.

Ms. Guzman called Mr. Diaz multiple times during the drive from Ephrata to Quincy. Mr. Diaz asked Ms. Guzman to call 911 but she refused. When Ms. Guzman arrived in Quincy, Mr. Diaz was waiting outside after calling 911. Ms. Guzman and her daughter stayed in the vehicle as Mr. Barajas passed in front of the residence twice, both times rapidly veering toward Ms. Guzman's vehicle and Mr. Diaz standing in the road. After Mr. Barajas drove away, Ms. Guzman and her daughter went into the residence.

The police arrived. One officer went to look for Mr. Barajas and the other, Officer Bushy, remained with Mr. Diaz to gather information. Officer Bushy tried to speak with Ms. Guzman in a back bedroom but she did not want him to come in. Officer Bushy spent 15 minutes gathering Mr. Diaz's statement before Ms. Guzman and her daughter came out to speak with him. In tears, Ms. Guzman gave her statement to Officer Bushy as her daughter clung to her.

In late October 2014, Mr. Diaz recorded phone calls initiated by Mr. Barajas. In one of the conversations, they discussed monies he owed Mr. Diaz. Mr. Barajas implied that his payment to Mr. Diaz should stop him from testifying against Mr. Barajas and if

he still chose to testify, Mr. Barajas would let it be known in the community that he is a snitch.

On January 20, 2015, the State charged Mr. Barajas in an amended information with burglary in the first degree, assault in the second degree, unlawful imprisonment, bribing a witness, and intimidating a witness.

At trial, Mr. Barajas objected on hearsay grounds to Mr. Diaz relaying the conversation he had with Ms. Guzman during her drive back to Quincy. The State argued that it was an excited utterance and made an offer of proof that included Mr. Diaz's testimony, Officer Bushy's observation of Ms. Guzman's demeanor, and evidence of Ms. Guzman's injuries. Based on the offer of proof, the court found that all the elements of the excited utterance exception were established. Mr. Diaz's testimony relaying his conversation with Ms. Guzman continued. When Officer Bushy also later testified about Ms. Guzman's statements to him, Mr. Barajas did not object.

In closing, the State argued that being called a snitch is either directly or indirectly communicating a threat. "That's what he's trying to do when he says he's going to out him as a snitch. He said Mr. Alvaro [Diaz] is a snitch, snitches get stitches, snitches end up in ditches. It's threatening, it's threatening language." There was no objection to the argument. The jury found Mr. Barajas not guilty of burglary and assault but convicted him of the remaining charges. Mr. Barajas appealed to this court. He later filed a PRP that this court consolidated with the appeal.

ANALYSIS

Mr. Barajas argues that the trial court abused its discretion in admitting Officer

Bushy's hearsay testimony and that the evidence was insufficient to support the unlawful

imprisonment and the intimidating a witness convictions. He also challenges one aspect

of the State's closing argument and argues that his conviction for bribing a witness

should merge with the intimidation of a witness conviction. We address the issues in the

order presented and address the sufficiency issues together.

*Officer Bushy's Testimony*

Mr. Barajas contends that Ms. Guzman was no longer under the influence of the

initial startling event, thus Officer Bushy's testimony was erroneously admitted. Mr.

Barajas waived this argument by failing to object at trial.

To present an evidentiary argument on appeal, the party must have challenged the

admission of evidence at trial on the same grounds that it raises on appeal. *State v.

Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). As explained in *Guloy*, a party may

only assign error in the appellate court on the specific ground of the evidentiary objection

made at trial. *Id.*; *State v. Boast*, 87 Wn.2d 447, 553 P.2d 1322 (1976). Since the

specific objection made at trial is not the basis Mr. Barajas is arguing before this court, he

has lost his opportunity for review. *Guloy*, 104 Wn.2d at 422.

At no time during Officer Bushy's testimony did Mr. Barajas object to hearsay.

The defense had objected during Mr. Diaz's testimony and the trial court overruled that

4

objection. However, Mr. Barajas does not assign error to Mr. Diaz's testimony; he assigns error to the unchallenged testimony of Officer Bushy. That challenge was waived by his failure to present the matter to the trial court.

*Sufficiency of the Evidence*

Mr. Barajas challenges the sufficiency of the evidence to support the jury's verdict on two of the charges. We will first review the challenge to the unlawful imprisonment conviction before addressing the intimidation of a witness conviction. Well-settled standards govern our review of these challenges.

Evidence is sufficient to support a verdict if the trier-of-fact has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green,* 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the State. *Id.* at 221.

*Unlawful Imprisonment*

Mr. Barajas first argues that the evidence did not establish the restraint element of the unlawful imprisonment charge. Properly viewed, the evidence did support the verdict.

The State was required to prove that Mr. Barajas knowingly restrained Ms. Guzman. RCW 9A.40.040. "Restraint," in turn, includes restricting "a person's movements without consent and without legal authority." RCW 9A.40.010(6). A

5

"restraint" is "without consent" when it is accomplished by intimidation. *Id.* It is a defense to unlawful imprisonment that the victim had a reasonably available avenue of escape. *See State v. Washington*, 135 Wn. App. 42, 50, 143 P.3d 606 (2006) (citing *State v. Kinchen*, 92 Wn. App. 442, 452 n.16, 963 P.2d 928 (1998)).

Mr. Barajas claims that Ms. Guzman had an available avenue of escape and did actually escape. However, the jury heard testimony that when Mr. Barajas was asked to leave Ms. Guzman's home he did not comply, he held her in a headlock, restrained her arms, and prevented her from leaving. For some period of time, there was no available avenue of escape because Mr. Barajas was actively preventing it. That Ms. Guzman eventually was able to escape simply underscores the fact that unlawful imprisonment is necessarily temporary. The evidence was sufficient to establish restraint.

*Witness Intimidation*

Mr. Barajas next argues that the evidence did not establish the threat element of the intimidation of a witness charge. However, the evidence permitted the jury to reach the verdict that it returned.

To convict Mr. Barajas of intimidating a witness, the jury was required to find that he used a threat against Mr. Diaz, a prospective witness, to induce Mr. Diaz to absent himself from trial. RCW 9A.72.110. The jury instruction read:

> Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person; or

to expose a secret or publicize an asserted fact, whether true or false, tending to subject any person to hatred, contempt, or ridicule; or

to do any other act that is intended to harm substantially the person threatened or another with respect to that person's health, safety, business, financial condition, or personal relationships.

To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk."

Report of Proceedings (RP) at 167 (Instruction 30).

Mr. Barajas contends that his recorded statements to Mr. Diaz were not serious expressions, but mere jest or idle talk. Mr. Barajas said to Mr. Diaz via phone, "I have your statements here man if you gonna go up on the stand and do what you gotta do you know who you are out here man. F***ing out here you'll be known out here too, as a snitch." Ex. 1 at 3. "Are you sure, are you sure about what you gonna do, go on the stand, like that against me? Because man you're gonna be known 'cause I'll put it out there. Like if you do that to me, you don't think I'm gonna put it out there man." Ex. 1 at 6. The jury was free to conclude these statements were threats. Thus, the recorded conversations were sufficient to support the jury's verdict.

*Prosecutor's Closing Argument*

Mr. Barajas contends that an unchallenged statement made by the prosecutor during closing arguments was a material falsehood. The standards for reviewing this alleged error are well settled. If there was no objection to the behavior at trial, relief can

7

be granted only if the error was so egregious that it was beyond cure by the trial judge. *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). Moreover, a prosecutor has "wide latitude" in arguing inferences from the evidence presented. *State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998).

The prosecutor argued, "He [Mr. Barajas] said Mr. Alvaro [Diaz] is a snitch, snitches get stitches, snitches end up in ditches." RP at 185. Mr. Barajas is correct; the prosecutor did not quote his exact words but used a short hand expression. However, any confusion on the part of the jury would have been cured by jury instruction 1 that expressly stated, "lawyers' statements are not evidence. The evidence is the testimony and the exhibits." RP at 151. Because it is presumed that the jury follows instructions, it necessarily follows that the State's closing argument was not evidence. Mr. Barajas has not established that the challenged statement was an egregious error. Thus, his failure to object at trial waived any challenge to the statement.

### Merger Doctrine/Double Jeopardy

Mr. Barajas argues that since the intimidation and bribing of a witness constitute the same criminal conduct, these crimes merge and his bribing a witness conviction must

be vacated. The problem with this argument is that bribing a witness is not a lesser charge of intimidating a witness. The merger doctrine was not triggered.

The merger doctrine evaluates whether the legislature intended multiple crimes to merge into a single crime for punishment purposes. *State v. Vladovic*, 99 Wn.2d 413, 419 n.2, 662 P.2d 853 (1983) (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). The merger doctrine applies only where to prove a more serious crime, the State must prove an act that a statute defines as a separate crime. *Vladovic*, 99 Wn.2d at 420-421. Here, the crime of bribing a witness does not have to be established to prove intimidating a witness. Although both charges share a common element of inducing a witness to absent himself from a formal proceeding, neither includes additional elements of the other. They are separate crimes.

Similarly, being charged with these crimes separately does not violate the prohibition against double jeopardy. A "defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law." *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). "If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses." *Id.* (quoting *Vladovic*, 99 Wn.2d at 423). As mentioned above, both statutes share a common element of inducing a witness to absent himself from a formal proceeding. Both statutes also include unique

9

elements. The unique element of bribing a witness is conferring a benefit. RCW

9A.72.090. The unique element of witness intimidation is use of a threat. RCW

9A.72.110. Mr. Barajas's convictions are not constitutionally the same. Therefore, there

is no double jeopardy violation.

The convictions are affirmed. The PRP is dismissed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.